Filed 7/1/26  P. v. Burke CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDREW JOSEPH BURKE,<br><br>    Defendant and Appellant. | D087344<br><br>(Super. Ct. No. SWF1907494) |


APPEAL from a judgment of the Superior Court of Riverside County, John M. Monterosso, III, and Samah Shouka, Judges.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Stephanie H. Chow and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

Andrew Joseph Burke was deemed mentally competent to stand trial for murder even though he planned to testify about his delusional belief that his ex-girlfriend would have been killed if he did not commit the homicides.

Two years later, Burke's attorney invited the court to revisit the earlier determination of competency, citing a new doctor's opinion that his client could not rationally assist in his defense because these delusions were "inflexible[.]" Counsel also claimed he was unable to persuade Burke either not to testify about his delusions or to discuss entering a plea of not guilty by reason of insanity. The court declined to revisit its competency determination after finding that the relevant circumstances had not materially changed.

On appeal, Burke emphasizes the reference in the new report that he started hearing voices after he was deemed competent, claiming this is a material change of circumstance that should invalidate the earlier finding of competency. This report, however, did not state that these voices played a significant role in the doctor's conclusion that Burke was incompetent, and we see no basis in the record to make this connection. Because Burke fails to show that the trial court abused its discretion in declining to revisit its competency determination, we find no prejudicial abuse of discretion in the court's ruling. Accordingly, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

In connection with Burke's killing of his grandparents, a jury in January 2023 convicted him of two counts each of first degree murder (Pen. Code, § 187, subd. (a)[1]), elder abuse (§ 368, subd. (b)(1)), and proximately causing the death of a person between 65 and 70 years of age (*id.*, subd. (b)(3)(A)). He was sentenced to a determinate term of two years for his use of

---

[1] Subsequent undesignated statutory references are to the Penal Code.

a deadly weapon (§ 12022, subd. (b)(1)) plus two consecutive indeterminate terms of life without the possibility of parole for his murder convictions.

## A. *Competency Proceedings*

### 1. *The Court's Competency Determination*

This case was initiated by a felony complaint filed in August 2019. A mental health screening at the jail where Burke was booked revealed "severe" psychiatric illness. At the request of Burke's attorney David Macher, the court suspended the proceedings in October 2019 and ordered psychologists David M. Walsh and Robert L. Suiter to opine whether the defendant was mentally competent to stand trial.[2]

In November 2019, both doctors concluded Burke was not competent. Dr. Walsh reported that Burke "exhibited delusional beliefs and mood disturbance," and that his symptoms "were consistent with [s]chizoaffective [d]isorder, which is a severe mental illness." He also noted that Burke had been refusing treatment. Dr. Suiter diagnosed the defendant as experiencing delusions and auditory hallucinations and exhibiting "unmistakable indications of mania." Among Burke's reported delusions were that he was simultaneously serving in the United States government and military, had

---

[2]    A "mentally incompetent" defendant may not be tried for a criminal offense. (§ 1367, subd. (a).) A defendant is mentally incompetent "if, as a result of a mental health disorder or developmental disability, [he or she] is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (*Ibid.*) A court must suspend the proceedings and appoint at least one psychologist or psychiatrist to examine a defendant when defense counsel expresses a doubt as to his or her client's competence. (§ 1368, subds. (b), (c); § 1369, subds. (a)(1), (b).)

diplomatic immunity, was in the mob, was a Harvard-educated lawyer, and followed the "Doom" religion.

In late 2020, Doctors Walsh and Suiter reevaluated Burke in anticipation of a competency hearing. By this time, his delusions had become focused on the alleged acts of "Ty Helper," who he described as a classmate from high school. Burke told both doctors that his girlfriend would have been raped and killed by Helper unless he murdered his grandparents. The reports submitted by both doctors stated that Burke was aware of the charges he was facing and was willing to work with his attorney. Suiter believed that the defendant could rationally assist Macher despite these delusions; Walsh disagreed. Suiter also noted that Burke "did not appear to be responding to internal stimuli" and that he denied experiencing hallucinations.

In April 2021, Macher requested that the court appoint Dr. Maurizio A. Assandri to offer a third report as to his client's competence. A month later, Assandri reported that Burke had been receiving psychiatric treatment for at least six months, "was completely asymptomatic," and denied hallucinating. According to Assandri, Burke understood the nature and seriousness of the proceedings and was able to rationally assist Macher in his defense.

To this second point, Burke expressed to Dr. Assandri frustration with the delay in his ability to "go to trial and to 'tell [his] story' " about Helper's alleged threats, thinking that his version of the events would result in an acquittal. But he trusted Macher and "would be and willing to listen and understand him[,]" "accept his legal advice[ ] in good faith[,]" and "discuss [any] disagreements." At that juncture, Assandri noted, Burke and his attorney had not discussed a plea of not guilty by reason of insanity (insanity plea).

4

The parties agreed that Burke was competent based on Dr. Assandri's report. The court accepted their stipulation without any independent analysis in May 2021 and reinstated the proceedings. (§ 1369, subd. (c)(1) [court may decide competence on a report to which neither party objects].) The preliminary hearing was held in August 2021, after which Burke was held to answer to the charges.

2. *Macher's Second Expression of a Doubt*

At a September 2022 trial readiness conference, the court granted Macher's request to appoint Dr. Stacey A. Waring to examine Burke. In November 2023, the court received Waring's report concluding that as of August 2023, Burke was incompetent.

According to Dr. Waring's assessment, the defendant's "factual understanding and knowledge of criminal proceedings is intact." But at the same time, Burke's "rational understanding is impaired" by his "firmly held" beliefs about Helper that he knew others thought were delusional. For example, Burke did not want to enter an insanity plea as Macher recommended "because he believes that he can 'prove' his claims" despite being unable to point to anything "logical or reality-based that would assist him" in doing so. In short, Waring opined, these delusions prevented him from forming a "realistic appreciation for possible outcomes" of his case.

Burke did not mention to Dr. Waring "any particular negative opinions" of Macher other than he seemed not to listen. Waring noted that the defendant was able to accept some of Macher's advice, as he agreed with his attorney's assessment that self-defense would not be a viable theory at trial. But Waring believed that the "inflexible" nature of Burke's beliefs about Helper "ostensibly will have a direct impact upon his ability to rationally discuss his case and to consider the advice of counsel." This led Waring to

5

conclude Burke lacked the "sufficient present ability to rationally assist counsel in the preparation and conduct of a defense."

Finally, Dr. Waring stated that Burke had been compliant with his treatment and thus had experienced "some psychiatric stabilization over the past four years." Although Burke reported hearing voices that he sometimes found distracting or responded to, Waring did not notice that these auditory hallucinations had any impact on his concentration or attention during her assessment. Nor did she mention these voices as a basis for her opinion that Burke was incompetent.

In November 2023, Macher expressed another doubt as to his client's competency based on circumstances he believed had materially changed since his client was deemed competent. Those circumstances were: (1) Macher's inability to break through Burke's delusions about Helper's threats or to convince him not to testify about them, (2) his client's reluctance to "even discuss" entering an insanity plea, and (3) a passing reference to Dr. Waring's opinion. Macher did not elaborate on these reasons during the hearing on his request.

The court declined to declare a doubt. In its view, the relevant question was whether there was new information indicating that Burke could no longer "competently or rashly cooperate with his counsel," considering that Dr. Assandri and Dr. Waring both concluded that he understood the nature of the proceedings. With respect to the relevant question, the judge stated that Burke had "constantly . . . maintained that the genesis and/or motivation for the alleged offense was based upon the perception he had as to a person named Ty Freeman Helper[,]" and that he "believed that this perception formed a defense, and he's maintained this to this day." Although Burke's refusal to consider an insanity plea was "somewhat new" according to the

6

judge, it was "not new that that particular plea or that particular avenue of defense of [Burke] was always there, because it's still a by-product of the delusional perceptions that existed from day one and still exist to this day." Because "the foundation of the issue that . . . Macher's pointing out is still the same as it was back then[,]" there was no "substantial or even material change" in the circumstances that cast doubt on the court's competency determination.

## B.  *Burke's Trial Testimony*

Against counsel's advice, Burke testified on his own behalf.  He described killing his grandparents in a manner consistent with the medical examiner's testimony.  He also told the jury that he committed the murders because of Helper's threats, albeit in more detail than the doctors' reports contained.

Sometime in 2015 or 2016, Burke testified, Helper told him in person that he was in trouble over a computer hacking mishap that could be fixed only if the defendant murdered his own grandparents.  Helper said that at some future date, he would send to Burke's computer an instruction to kill his grandparents within two weeks.  If this deadline were missed, Helper would rape and kill Burke's then-current girlfriend, who also went to the same high school.  Helper also said he would kill one of Burke's family members if Burke told anyone about these threats.

In July 2019, two weeks before the murders, Burke thought he received Helper's instruction because his computer acted strangely.  It was not until the last day of the deadline that he decided to follow it.  Burke told the jury that while listening to music to try to calm down, "I just picked up the hatchet and did it.  I didn't think about it[.]"  To the question of whether

7

killing his grandparents made him feel good Burke responded, "I'm a psychopath. I don't feel. [¶] I have no emotion."

Burke called no other witnesses. The prosecution then called Ty He*p*ler as a rebuttal witness. When shown a picture of a man the prosecutor identified as Hepler, Burke confirmed Hepler was the computer hacker who told him he would have to kill his grandparents, but claimed that he went by a different name then. For his part, Hepler testified that he went to high school with Burke and that they were in the same circle of friends as the woman Helper allegedly threatened. Hepler stated that he last saw Burke in person in 2016 and occasionally texted with him after that. He also denied ever telling Burke to hurt anyone.

After the verdicts were read, Macher moved for a new trial on the ground that Burke was incompetent, arguing that his client's testimony validated his reasons for inviting the court to revisit its competency determination. Counsel also noted that Hepler's testimony contradicted Burke's—which was the "worst client testimony [Macher] had ever seen"— and the defendant refused either to put on a mental health defense or discuss the possibility of an insanity plea.

In May 2024, the court denied Macher's motion. The judge "grappled" with whether to declare a doubt based on the defense Macher told the court during pretrial proceedings Burke planned to assert and again based on his trial testimony. But, the court concluded, the fact that the defendant was likely to mount this defense was known when he was deemed competent, and so, "[t]here was no substantial change in circumstances or any new evidence . . . either before the beginning of evidence or during the trial."

8

## DISCUSSION

### A. *Validity of the Competency Determination*

Burke claims, for the first time on appeal, that the trial court based its competency determination on an assumption Dr. Waring's report showed was no longer valid—medication could prevent him from hearing voices. Relying primarily on *People v. Tejeda* (2019) 40 Cal.App.5th 785 (*Tejeda*), Burke argues we must reverse his convictions because this was a material change in circumstances as to his competence. The People counter that the bases Macher actually relied upon to express a second doubt had already been addressed by the court when it deemed Burke competent and that none of the actions Macher identified as evidencing his client's inability to assist in the defense was inherently indicative of incompetence.

The competency inquiry is two pronged: "[c]ourts evaluate whether a defendant understands the proceedings against him and whether he is presently able to consult with his lawyer with a reasonable degree of rational understanding." (*Tejeda*, *supra*, 40 Cal.App.5th at p. 793; accord fn. 2, *ante*.) A trial court's duty to conduct a competency hearing may arise any time before judgment is entered. (*Tejeda*, at p. 793; accord *People v. Rodas* (2018) 6 Cal.5th 219, 236, fn. 5 [the "duty to assess competence is a continuing one"].) But "after a defendant is found competent, the court need not conduct a second competency hearing unless presented with a substantial change of circumstances or with new evidence casting a serious doubt on the validity of the earlier finding." (*Tejeda*, at p. 793.)

"We review for substantial evidence the trial court's finding of no substantial change of circumstances or no new evidence casting serious doubt on the initial competency determination [citation], and we review its decision not to reinstate competency proceedings for an abuse of discretion." (*People*

9

*v. Easter* (2019) 34 Cal.App.5th 226, 243 (*Easter*).) Applying these standards here, we conclude substantial evidence supports the court's finding that Macher failed to identify a substantial change in circumstances as to Burke's competence in November 2023, and accordingly, the court appropriately exercised its discretion not to revisit the prior competency determination.

To start, Burke's argument based on Dr. Waring's observations that he was again hearing voices is fundamentally flawed because this symptom was not a basis for her opinion that Burke was incompetent. Rather, Waring mentioned Burke's auditory hallucinations only in passing and instead reached her competency conclusion based exclusively on his delusions about Helper. What Burke's argument on appeal is missing is a connection *in fact* between Burke's internal voices and his ability either to understand the proceedings or to assist Macher. But Waring did not make this connection; Macher did not attribute his perceived difficulty in communicating with his client to a suspicion that he was hearing voices; and Burke's delusions about Helper persisted whether he was hearing them or not.

Against this backdrop, we turn to *Tejeda*. The defendant there had been restored to competency and, the doctor opined, would likely remain competent so long as he "could set aside his delusions [of being the subject of a 'government mind control experiment'] for purposes of assisting his counsel." (*Tejeda*, *supra*, 40 Cal.App.5th at p. 790.) Tejeda would go on to testify about his delusions, consistent with a prediction counsel made during an earlier mid-trial motion hearing. (*Id.* at pp. 791–795.) Because "Tejeda's restoration to competency was *expressly* premised on [the doctor's] belief that he could compartmentalize his delusion and keep it separate from his legal defense," there was a "strong suggestion that as a result of his recurring delusions, [he] could no longer cooperate with his counsel and meaningfully

10

assist in his defense." (*Id.* at pp. 795–796, italics added.)  Thus, we held, the court erred in failing to declare a doubt as to Tejeda's competence. (*Ibid.*)

Pressing for the same outcome here, Burke claims that he was deemed competent based on "findings" that his medication would effectively treat the symptom of hearing voices, which he likens to the assumption about the defendant's continued competence in *Tejeda*.  But in contrast to *Tejeda*, there was no express assumption about Burke's internal voices and his likelihood of continued competence in May 2021, either by Dr. Assandri, Macher, the prosecutor, or the trial court.  And as we just explained, the fact that this symptom appeared again after Burke was deemed competent was not, in  Dr. Waring's view, relevant to her ultimate opinion. *Tejeda*, therefore, is unhelpful to Burke's argument.

As for the court's rejection of Macher's reasons for the court to revisit the November 2023 competency determination—which Burke does not address on appeal—we find that substantial evidence supports its finding that they all stem from circumstances it considered when the parties stipulated Burke was competent.  Further, Macher's bare-bones declaration failed to establish that Burke was *incapable* of rationally considering his advice not to testify about Helper or to consider an insanity plea, as opposed to simply being *unwilling* to address those topics to counsel's satisfaction. (See *People v. Mai* (2013) 57 Cal.4th 986, 1034 ["an uncooperative attitude is not, in and of itself, substantial evidence of incompetence"].)  It was not enough for Macher to rely on conclusory statements that Burke could not assist him or even listen to his advice, especially when there is evidence in Dr. Waring's report that neither assertion was entirely true.  (See *ibid.*; cf. *Easter, supra*, 34 Cal.App.5th at p. 243 [new competency hearing ordered based on attorney's detailed description of worsening symptoms likely linked

11

to a change in defendant's medication that prevented communication].) Accordingly, the court's decision not to declare a doubt in November 2023 was an appropriate exercise of discretion.

## B.   *Remaining Issues*

The parties identify three sentencing-related issues.  The first, raised by Burke, concerns the trial court's oral imposition of a $300 parole revocation restitution fine, which it suspended, notwithstanding that it orally pronounced consecutive sentences of life without the possibility of parole for his murder convictions.  Section 1202.45, subdivision (a) states that this fine is mandatory when a sentence "includes a period of parole."  Conversely, this statute is inapplicable to a defendant sentenced to a term without the possibility of parole. (*People v. McInnis* (2021) 63 Cal.App.5th 853, 866–867.) We therefore order the trial court to strike its reference to a $300 parole revocation restitution fine.

The second issue, also raised by Burke, is that the abstract of judgment and the minute order both show that the court imposed a $10,000 restitution fine under section 1202.4, subdivision (b) that was suspended unless parole were to be revoked.  During the oral pronouncement of sentence, however, the trial court "waive[d] all mandatory fines and fees" except for the $300 parole revocation restitution fine just discussed.  The parties agree that this fine should be stricken from the abstract so that it accurately reflects the court's oral pronouncement of judgment.  So do we.  (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 127 (*Cardenas*) [Court of Appeal has "the inherent authority to correct an abstract of judgment that does not accurately reflect the oral judgment of the trial court."].)

Finally, the People point out that the abstract indicates the court imposed consecutive sentences of life *with* the possibility of parole for his two

12

murder convictions, which contradicts the oral pronouncement of consecutive sentences of life *without* the possibility of parole.  We will order this correction as well.  (*Cardenas, supra*, 53 Cal.App.5th at p. 127.)

## DISPOSITION

The trial court is directed to strike the $300 parole revocation restitution fine and correct the abstract of judgment to (1) state that Burke was sentenced to consecutive sentences of life *without* the possibility of parole for his murder convictions, and (2) strike the $10,000 fine under section 1202.4, subdivision (b).  The clerk shall prepare a corrected abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


DATO, Acting P. J.

WE CONCUR:


DO, J.


RUBIN, J.